# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |  |
|---|---|---|
| MAURICE LAVELL JOHNSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | CV419-161 |
| SHERIFF JOHN T. WILCHER, *et al.*, | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, plaintiff Maurice Lavell Johnson has filed a 42 U.S.C. § 1983 complaint for ten million dollars for punitive and compensation damages, based on alleged false imprisonment against a variety of defendants. Doc. 1 at 5-6. The Court now screens his Complaint under 28 U.S.C. § 1915A, which requires the immediate dismissal of any prisoner complaint that fails to state at least one actionable claim against a governmental entity or official.

## BACKGROUND

Johnson alleges that he was sentenced on February 25, 2019. Doc. 1 at 5. He claims he was sentenced to 30 years and 30 days to serve in confinement with 29 years, 11 months suspended with credit for time

served. *Id.* According to plaintiff, he should have been released on February 25, 2019, but was apparently not released until at least the next day. *Id.* He alleges that when he was returned to the prison and informed Ofc. Joseph and Ofc. Johnson of his discharge, they contacted records and were told that there was no confirmation of his discharge. *Id.* Ostensibly because he was upset by this circumstance, he was transferred from the infirmary to lockdown by Lt. Keys. *Id.* However, he was also told by Lt. Blanklin that someone would check on his situation. *Id.* He claims that this error occurred because Ms. Mosley failed to make sure that the Clerk of Court had a copy of the disposition. He also alleges that two public defenders Martin and Byrne failed to make sure that the disposition was conveyed to staff at the prison. Doc. 1 at 5. Based on the allegations in the complaint, plaintiff was held for at least one day after February 25. *Id.*

## ANALYSIS

Johnson does not include a fully developed legal theory supporting his claim. Instead, he asserts he suffered from anxiety and depression from "not knowing if I was going to be released or when." Doc. 1 at 5. In order to establish a cognizable claim for unlawful detention under § 1983, plaintiff must allege facts showing the elements of common law false

imprisonment: (1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). Plaintiff must further establish that the imprisonment resulted in a violation of his substantive due process rights under the Fourteenth Amendment.

Courts have recognized that incarceration beyond the sentence imposed *can* constitute a violation of the Eighth Amendment's prohibition on cruel and unusual punishment, *see e.g., Sample v. Diecks*, 885 F.2d 1099, 1108 (3rd Cir. 1989) ("We think there can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment."), or a deprivation of liberty without due process in violation of the Fourteenth Amendment. *See, e.g., West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (citing *Cannon v. Macon County*, 1 F.3d 1558, 1562-63 (11th Cir. 1993)). However, both theories require that a particular official was deliberately indifferent to the violation. *See Sample*, 885 F.2d at 1110 ("we hold that there can be no eighth amendment liability . . . in the absence of a showing of deliberate indifference on the part of the defendant . . ."); *West*, 496 F.3d at 1327 ("To establish [a due process violation], Plaintiffs must show that Defendants

acted with deliberate indifference to Plaintiffs' due process rights."). The deliberate indifference element of both theories implies that mere error is insufficient to establish a violation. *Sample*, 885 F.2d at 1108-09 ("unforeseeable accidents or inadvertent mistakes may occur during imprisonment, resulting in harms to inmates. Such accidents or mistakes are a necessary cost of any prison system; they therefore are not 'repugnant to the conscience of mankind,' [cit.] and do not violate the eighth amendment." (citations omitted)); *West,* 496 F.3d at 1327 ("Human error does not equal deliberate indifference.").

Johnson has alleged nothing that suggests that the officers he notified of his supposed release were deliberately indifferent, even if they had sufficient knowledge. His allegations suggest that they—at worst—committed mere error. *See* doc. 1. Whether construed as alleging either a violation of the Eighth or Fourteenth Amendment, Johnson must allege that a particular defendant was deliberately indifferent to his detention. *See Sample*, 855 F.2d at 1110 (to establish an Eighth Amendment violation, "a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must

4

show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight.  Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention."). These essential allegations must be *factual*; *i.e.* it is not enough for Johnson to merely assert that "some" official had the requisite knowledge and failed to act – he must point to some fact that shows it.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a pleading is insufficient if it offers no more than "naked assertions devoid of further factual enhancement." (quotations, alterations, and citation omitted); *Hall v. Smith*, 170 F. App'x 105, 107-108 (11th Cir. 2006) (explaining "vague and conclusory allegations" are not sufficient to state a claim requiring allegation of deliberate indifference).

     While Johnson alleges that he informed various officers of the error, he also asserts that they attempted to clarify the accuracy of his statements—and indeed—appeared to receive confirmation regarding Johnson's continuing incarceration from Records.  Doc. 1 at 5.  Moreover, at least one of the officers checked up on his statements at a later date

5

potentially—although it is unclear from the Complaint—resulting in his release the next day. *Id.* Accordingly, the allegations plaintiff makes establish that the officers who were, at least, presumptively aware of his plight did not intentionally disregard it. In the absence of any sufficient allegation of deliberate indifference, Johnson fails to state a viable claim against the named officers.

Plaintiff's claims against the remaining defendants; Sheriff Wilcher, Tammie Mosley, Meg Heap, Todd Martin, James Byrne, and Judge John Morse should also be dismissed. District Attorney Meg Heap is absolutely immune from § 1983 liability where her alleged malfeasance stemmed entirely from her "function as an advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("[A]bsolute immunity extends to a prosecutor's 'acts undertaken . . .in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State. . . . ' "), *see Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Jackson v. Capraun*, 534 F. App'x 854, 859 (11th Cir. 2013) (prosecutor entitled to absolute immunity for initiating prosecution even if he did so with malicious intent). Likewise, defense counsel, whether court-appointed or privately retained, does not qualify as a state actor for

purposes of § 1983 liability. *Polk Cty. v. Dodson*, 454 U.S. 312, 318 n. 7 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983); *Pearson v. Myles,* 186 F. App'x 865, 865 (11th Cir. 2006) (court-appointed defense counsel did not act under color of state law and thus was not subject to liability under § 1983); *Deas v. Potts*, 547 F.2d 800, 800 (4th Cir. 1976) ("A private attorney who is retained to represent a criminal defendant is not acting under color of state law."), *cited in Robinson v. Bernie*, 2007 WL 80870 at *1 (S.D. Ga. Jan 8, 2007). Accordingly, claims against Meg Heap, Todd Martin, and James Byrne are dead on arrival.

Likewise, judges, like Judge Morse, are absolutely immune from civil liability for acts taken pursuant to their judicial authority, *see, e.g., Forrester v. White,* 484 U.S. 219, 227-229 (1988), even when the judicial acts were done *maliciously* or *corruptly*. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (recognizing as a "well established" principle of law "of the highest importance" that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been

done maliciously or corruptly."); *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986). To the extent that plaintiff seeks to sue Judge Morse in his official capacity, his claim also founders on the Eleventh Amendment. *See Simmons v. Conger*, 86 F.3d 1080, 1084 (11th Cir. 1996) (district court erred in awarding damages against state court judge "in his official capacity, given that such relief is barred by the Eleventh Amendment"). The question of liability in their individual capacity, however, is more complicated.

Judges' individual liability depends upon the application of a two-part test. *Simmons*, 86 F.3d at 1084. The first part of the test requires determination of "whether the judge dealt with the plaintiff in a judicial capacity." *Id*. If not, "then there is no immunity." *Id*. at 1085. "If the judge was dealing with the plaintiff in his judicial capacity, however, the second part of the test is whether the judge acted in the clear absence of all jurisdiction." *Id*. (quotes and cite omitted). Only judicial acts "in the clear absence of jurisdiction" can support a judge's individual liability. *Id*. The distinction between judicial acts "lacking jurisdiction," for which a judge might be individually liable, and those merely exceeding his jurisdiction, which will not, is often subtle. Nothing in plaintiff's

Complaint indicates that Judge Morse was acting in any capacity other than those over which he had jurisdiction. Accordingly, claims against Judge John Morse should be **DISMISSED**.

Sheriff Wilcher also cannot be sued because § 1983 claims require an allegation of a causal connection between a defendant's acts or omissions and the alleged constitutional deprivation.[1] *See Zalter v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Such claims cannot be based upon theories of *respondeat superior* or vicarious liability. *See Polk Cty.*, 454 U.S. at 325; *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Johnson's statements do not include any allegations connecting Sheriff Wilcher to his allegedly tortious confinement beyond merely listing his name on the case caption. That is not enough to state a claim. *See, e.g., Ashcrift v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim

---

[1] Although plaintiff does not list Sheriff Wilcher in his official capacity, even if he had his claims would still fail. *See Cambell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) ("As a supervisory official, Sheriff Johnson is only liable under § 1983 for the unconstitutional acts of his subordinates if he personally participated in the allegedly unconstitutional conduct, or his actions were causally connected to the alleged constitutional deprivation.").

upon which relief can be granted.) Accordingly, any claim against Sheriff Wilcher should be **DISMISSED**.[2]

Finally, the Clerk of Court, Ms. Mosley, cannot be held liable under § 1983 because plaintiff does not allege that she had any intent to confine him beyond the term of his sentence. Rather, in Georgia, a state prisoner seeking to challenge the computation of their sentence should file a state petition for a writ of "mandamus or injunction against the Commissioner of the Department of Corrections or . . . a [state] petition for habeas corpus, depending on what point in time the service of [the prisoner's] sentence any additional action may be filed." *Maldonado v. State*, 580 S.E.2d 330, 331 (Ga. Ct. App. 2003) (citations omitted). To the extent plaintiff seeks to file a claim against Mosely for failure to supervise or negligence, these are state-law claims. Since the Court determines that no viable federal claims exist in this case, the Court should decline to exercise supplemental jurisdiction over any state claims which could arguably remain. *See* 28 U.S.C. § 1367(c) (allowing a court to "decline to exercise supplemental

---

[2] Plaintiff also lists Sherron Davis and Greg McConnell as defendants but makes no factual allegations against them and declines to even reference their names other than as defendants. Accordingly, any claims against them should, likewise, be **DISMISSED**.

10

jurisdiction" where all "claims over which it has original jurisdiction" have been dismissed).[3] Accordingly, any claims against defendant Mosley should be **DISMISSED**.

## CONCLUSION

Accordingly, plaintiff's complaint should be **DISMISSED**.[4] Moreover, it is time to pay his filing fee. Since his PLRA paperwork reflects an average monthly balance and average monthly deposits of $0, doc. 16 at 1, he does not owe a partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist"). See 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist,"

---

[3] It is unclear to the Court whether there is even any claim against the Clerk in this case. *See* O.C.G.A. § 42-5-50 (giving clerk of court at least 30 working days following receipt of sentence to send notice of sentence to Commissioner of Corrections); *but see Hicks v. McGee*, 713 S.E.2d 841 (Ga. 2011).

[4] Generally, a *pro se* plaintiff is granted at least one opportunity to amend. *Jenkins v. Walker*, 620 F. App'x 709, 711, (11th Cir. 2015) (*citing Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (*en banc*)) ("When a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also* Fed. R. Civ. P. 15(a)(2)(courts should grant leave to amend "freely . . . when justice so requires"). However, the Court is under no such obligation "if the amended complaint would still be subject to dismissal." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). That's the case here. Plaintiff cannot plead any set of facts which would allow his claims to proceed and do not appear amendable. Finally, because the Court recommends the dismissal of his complaint, his pending discovery motions, docs. 4, 6, 9, & 10, as well as his Motion to Relocate, doc. 5, should likewise be **DISMISSED AS MOOT**.

under a specific 20 percent formula). Plaintiff's custodian (or designee) shall, however, set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full. In the event that plaintiff is transferred to another facility, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to his new custodian. The balance due from plaintiff shall be collected by the custodian at all future facilities in accordance with the terms of this Order. A copy of this Order and of the Consent to Collection of Fees form Trust Account shall be served upon plaintiff and his current custodian. The payment portion of this Order is to be implemented immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. §636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned

"Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 16th day of January, 2020.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA